J-S19037-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :               PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| JORDAN W. STURTZ | : |
| | : |
| Appellant | :   No. 1586 WDA 2025 |

Appeal from the Judgment of Sentence Entered November 10, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0004025-2024

BEFORE:   SULLIVAN, J., NEUMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: July 14, 2026**

Appellant, Jordan W. Sturtz, appeals from the judgement of sentence entered in the Court of Common Pleas of Westmoreland County on November 10, 2025. After a careful review, we affirm.

The relevant facts and procedural history, as elicited by the testimony at Appellant's non-jury trial on September 18, 2025, are as follows: On September 28, 2024, Scottdale Police Officer Daniel Coffman and Police Chief Barry Pritts were on patrol during the overnight shift when they were dispatched to investigate a motor vehicle accident involving a utility pole located in front of the Dairy Haus in Scottdale. N.T., 9/18/25, at 5-6.

---

[*] Former Justice specially assigned to the Superior Court.

Upon arrival, the officers observed that Appellant's white Toyota van had struck and splintered a utility pole. Both officers expressed concern that the pole could collapse if the vehicle were moved. Appellant was outside the vehicle walking his dog and provided Officer Coffman with his driver's license and vehicle documentation. *Id.* at 7.

Officer Coffman observed that Appellant responded slowly to questions and had glassy, watery eyes. Because Appellant appeared distracted by his dog, Officer Coffman asked him to place the dog back inside the vehicle. While attempting to do so, Appellant appeared to lack the coordination necessary to complete the task. Based upon these observations and his training and experience as a police officer, Officer Coffman requested that Appellant perform field sobriety tests. N.T., 9/18/25, at 8.

Before administering the tests, Officer Coffman asked Appellant whether he had consumed any alcohol, and Appellant denied drinking. As Officer Coffman moved closer to begin the testing, he detected the odor of alcohol coming from Appellant. N.T., 9/18/25, at 9. He also observed a cut on Appellant's left hand near the knuckle area and asked whether Appellant had any injuries or required medical attention. Appellant indicated that he did not. *Id*.

Officer Coffman then administered field sobriety tests and observed several indicators of impairment, including difficulty following instructions, questioning directions, swaying, and losing balance during both the walk-and-

turn test and the one-leg stand test. N.T., 9/18/25, at 10-11. Based on Appellant's performance, Officer Coffman offered him the opportunity to submit to a portable breath test. Before doing so, he again asked whether Appellant had consumed any alcohol. N.T., 9/18/25, at 14. At that time, Appellant admitted that he had consumed one beer earlier in the evening but refused the portable breath test. *Id*.

Officer Coffman subsequently informed Appellant about chemical testing and read the DL-26B Implied Consent warnings to him. Appellant refused to consent to a blood test. Officer Coffman testified that Appellant appeared to pause and consider the request before deciding against it. *Id.* at 15-16. Even after Officer Coffman explained the consequences of refusal, including the effect on his driving privileges, Appellant continued to refuse testing. Appellant was transported to the hospital and given another opportunity to consent to a blood draw, but he again refused and stated that he would see the matter in court. *Id.* at 16.

Chief Barry Pritts also testified regarding his observations at the scene and his investigation of the collision. He stated that he detected the odor of alcohol coming from Appellant. N.T., 9/18/25, at 35. Although he observed a crack in the vehicle's windshield, he did not observe blood, hair, skin, cuts, abrasions, or other injuries to Appellant's head or face that would typically be expected if Appellant's head had struck the windshield. N.T., 9/18/25, at 33-34.

As part of his investigation, Chief Pritts measured the tire marks left by the vehicle. He determined that the van traveled approximately fifty-six feet off the right side of the roadway and across a grassy area before striking the utility pole. *Id.* at 32. He further testified that skid marks did not appear until approximately three feet before impact, indicating that the vehicle's brakes were not applied until immediately before the collision. *Id*.

Appellant testified in his own defense. He stated that he was tired on the night of the accident because he had been hospitalized for chest pains the day before and was not released until the early morning hours of September 28, 2024. N.T., 9/18/25, at 47-48. After leaving the hospital, he performed approximately six hours of painting work for a neighbor, returned home to walk and feed his dog, and then drove to his fiancée's residence in Everson. *Id.* at 49. According to Appellant, he must have dozed off briefly while driving. He testified that when he awoke and saw the utility pole, he applied his brakes, but it was too late to avoid the collision. N.T., 9/18/25, at 50-51. During his testimony, Appellant acknowledged that he had consumed two alcoholic beverages before the accident. *Id.* at 52.

Following the presentation of evidence, the trial court declined to hear closing arguments and found Appellant guilty of Driving Under the Influence, Careless Driving, and Driving on Roadways Laned for Traffic. The court found Appellant not guilty of the summary charge of Reckless Driving. Appellant was sentenced on November 10, 2025. Appellant filed a timely notice of appeal on

December 8, 2025. Appellant filed a statement pursuant to Pa.R.A.P. 1925(b) on January 16, 2026. The trial court filed its Rule 1925(a) opinion on February 4, 2026. This appeal followed.

Appellant raises the following issue for our review:

WAS THE VERDICT OF GUILTY ENTERED BY THE TRIAL COURT ON NOVEMBER 10, 2025, SUPPORTED BY SUFFICIENT EVIDENCE WHEN THE COURT RELIED EXCLUSIVELY ON APPELLANT'S REFUSAL TO SUBMIT TO A BLOOD TEST AS CONSCIOUSNESS OF GUILT?

Appellant's Br. at 4.

We begin with our standard of review when faced with a sufficiency of the evidence challenge:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. . . . When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citations omitted). The factfinder is "entitled to draw reasonable inferences from the facts presented, resolve any issues of credibility and believe all, part or none of the evidence." *Commonwealth v. Hankerson*, 444 A.2d 727, 728 (Pa. Super. 1982).

Here, Appellant claims that the trial court rendered a verdict with insufficient evidence because the court relied exclusively on his failure to submit to a blood test as consciousness of guilt. Appellant's Br. at 8. Appellant

also argues that while there was testimony that he exhibited signs of impairment during the field sobriety tests, there was no assertion that he failed the tests. *Id*. He argues that the court was not able to review body camera or dash camera footage from the accident because the Scottdale police lost it. *Id*. Finally, Appellant argues that the court failed to consider his testimony that he was injured by the accident and confused when interacting with the officers. *Id.* at 9.

Section 3802(a)(1) of the Vehicle Code provides:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

In order to prove a violation of this section, the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving. ***Commonwealth v. Palmer***, 751 A.2d 223, 228 (Pa. Super. 2000). To establish the second element, the Commonwealth must show that alcohol has

> substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving,

- 6 -

notwithstanding the absence of evidence of erratic or unsafe driving.

*Id.* (citations and footnote omitted).

The Vehicle Code also provides the following:

(e) Refusal admissible in evidence.--In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e). Other evidence admissible to prove a violation of section 3802(a)(1) include demeanor, performance on field sobriety tests, bloodshot eyes, slurred speech, and odor of alcohol. ***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009). Relevantly, an "accident itself constitutes evidence that [a defendant] drove when he was incapable of doing so safely[,]" particularly when "[t]here was only one vehicle involved in the accident, and [the driver] admitted that he had lost control of the vehicle as he was driving home after drinking[.]" ***Id.*** at 880.

Here, we find that the trial court as fact finder did not merely rely on Appellant's test refusal as consciousness of guilt evidence in order to convict Appellant. The trial court stated in its opinion:

The [c]ourt finds as credible the testimony of Officer Daniel Coffman and Chief Barry Pritts with respect to their observations of [Appellant]. This [c]ourt further finds credible their testimony that based on their observations, as well as their training, knowledge and experience as police officers, that [Appellant] was

impaired on September 28, 2024, and that he could not operate his vehicle safely, resulting in the accident to which they responded.

Furthermore, this [c]ourt finds credible the testimony of the officers that they smelled alcohol emanating from [Appellant]; and this testimony, coupled with the evidence presented that [Appellant's] story regarding his consumption of alcohol changed from initially saying he had had no alcohol, to admitting he had one (1) drink before he refused the portable breath test, to his subsequent admission during his testimony at trial that he had two "beverages," renders his testimony as incredible to this [c]ourt.

Tr. Ct. Op. at 5-6 (citations to the record omitted).

Viewing the evidence in a light most favorable to the Commonwealth as verdict winner, we find the evidence to be sufficient that Appellant was impaired while driving. We are unpersuaded by Appellant's assertion that the officers never testified that he "failed" the field sobriety tests despite the indicators that he was impaired. Appellant's Br. at 8. Poor performance on a field sobriety test is persuasive evidence absent testimony that the driver "failed." *See Commonwealth v. Slonaker*, 795 A.2d 397, 402 (Pa. Super. 2002) (holding "the law is well settled that reasonable grounds to arrest does not require the failure of field sobriety tests[]") [(citation omitted)].

Appellant also argues that the Commonwealth failed to admit video evidence of the traffic stop which he claims is "typically key to proving that the accused drove under the influence[.]" Appellant's Br. at 10. However, there is no particular type of evidence that must be admitted as long as there is sufficient evidence to establish each material element of the crime charged.

*Widmer, supra*. Here, Appellant's glassy eyes, the odor of alcohol, several indicators of impairment during the field sobriety tests, Appellant's admission to the officers to having consumed one beer and his admission at trial to having consumed two beverages, and the accident itself are sufficient to establish that Appellant was intoxicated at the time of driving. The trial court did not find Appellant's testimony credible that he was injured by the accident when there were no signs that Appellant hit his head or needed medical attention, and given that Appellant was "deceptive" regarding the number of drinks he had consumed. Tr. Ct. Op. at 2, 6-7. The trial court as factfinder was free to draw reasonable inferences from the circumstances, and we may not disturb the trial court's credibility findings. *Hankerson, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/14/2026